THE TOWN OF PARIS, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF ILLINOIS, Defendants in Error.

ERROR TO EDGAR.

Where an indictment concludes against the form of the statute, etc., it clearly indicates a prosecution under a statute, and not at common law.

The offense of keeping and maintaining a "*calaboose,*" by an incorporated town, is not an offense against the statute, for which an indictment will lie.

THIS was a prosecution by the People against the town of Paris for keeping and maintaining a nuisance.

An indictment was found at the August special term, 1862, of the Edgar Circuit Court, containing but one count, charging the town of Paris, described therein as a corporation, with having kept and maintained "a disorderly house, known as a calaboose," and with having kept and confined "in said house, divers disorderly and noisome persons, to the great damage. and common nuisance of the said citizens of the town of Paris and the People of the State of Illinois, in returning, passing, repassing, riding, laboring and residing near the said house, contrary," etc.

Upon this indictment being found, a capias issued, commanding the sheriff, etc., "to take *the body of the Town of Paris* and it safely keep, so that" he should "have *its body* before the judge," etc.

The sheriff returned this capias, "executed by arresting and taking bail from Walter Booth, the President of the Town Council," etc.

Afterwards, the defendant below appeared and moved to quash the indictment, which motion was overruled by the court.

A plea of not guilty was then entered, and a trial had before a jury, resulting in a verdict of guilty.

The evidence heard on the trial preserved in the bill of exceptions showed that the town of Paris had erected in the fall of 1860, on the back part, fifteen or twenty feet from the west end of lot number thirty-five owned by the town, on the west side of the public square, a calaboose, which was still there; that an alley sixteen feet wide separated the lot on which the calaboose stood from that on which Mr. Metcalf lived; that the calaboose was about forty feet from Mr. Metcalf's residence, which was there when the calaboose was built, one hundred feet from the street, eighty feet distant from J. K. Douglas' residence. The witnesses referred to a map, a copy of which is contained in the record, to show the situation of surrounding residences, buildings, streets and alleys. They described the calaboose as having walls of thick oak plank, ceiled inside, having two small grated windows, one on the west and the other on the east end, and stated that there was a tight plank fence eight feet high on the south side of the lot, next to the alley, and one so high that a man standing on the ground could not look over it on the north side. Drunken, disorderly persons had been confined there, but not over twelve hours. Some who were drunk when arrested had been confined there awaiting trial, to allow them to get sober. Witnesses for the prosecution testified, that some who were confined there made noises by hallooing and blackguarding, and used vulgar and obscene language in the day time and at night, which could be heard in their houses and on the streets; not so bad lately as in the latter part of 1860 and fore part of 1861. The town constable testified, that he had kept one person there eight hours. The police magistrate, Otis Brown, testified, that a good many offenders had been confined there, but thought that only three had been noisy. Hoge was one of these. He was intoxicated, enraged and abusive of Logan, a policeman. A majority had been quiet. The calaboose had been carefully managed and kept clean. His office was on the same lot, and he had been police magistrate ever since it was built.

The ordinances of the town of Paris were read in evidence, one of which provides for the confinement of persons in the calaboose in certain cases to await trial.

Thomas C. W. Sale, and Sheridan P. Reed, for Plaintiff in Error.

J. B. White, State's Attorney, for The People.

Walker, J. This indictment concludes, "contrary to the

form of the statute in such case made and provided." This clearly designates it as a prosecution under the statute and not at the common law. When an indictment contains this conclusion, a recovery can only be had on a statutory offense. And if no statute exists creating the offense, then the indictment is vicious, and should be quashed on motion, or a demurrer sustained if interposed. Such a motion was interposed and overruled. Without stopping to inquire whether the 10th section of article 13 of the constitution prohibits the city from adopting ordinances for the imprisonment of persons, or justices of the peace or police magistrates from committing them under such ordinances or a law of the State, we shall proceed to the consideration of the question whether the court below erred in refusing to quash the indictment.

In determining this question, it will become necessary to determine, whether the indictment describes any offense, created by the statute. It is urged that it may be sustained under the 127th section of the act regulating criminal jurisprudence. That section prohibits and defines the punishment of "open lewdness, or other notorious act of public indecency, tending to debauch the public morals," or the keeping open a tippling house on the Sabbath day or night, or maintaining or keeping a lewd house or place for the practice of fornication, or keeping a common ill-governed and disorderly house, to the encouragement of idleness, gaming, drinking, fornication or other misbehavior. The indictment was not designed to embrace any of these offenses, as it nowhere describes either of them. Nor can we perceive, notwithstanding there was undoubtedly disorderly conduct in this *calaboose*, that it was a tippling house, lewd house for the practice of fornication, or a common ill-governed and disorderly house, to the encouragement of idleness, gaming, drunkenness, fornication, or other misbehavior. Now the design in erecting and maintaining this building, however obnoxious and objectionable to the residents in the vicinity, was the very opposite of these misdemeanors. It was intended to reform by punishment, those confined in the building.

Then can it be sustained under the 134th section of the same act? That section prohibits the obstruction or injury of public roads, bridges, navigable streams, so as to render them inconvenient or dangerous to pass; the erection or establishment of any offensive trade, manufacture or business, or to continue the same after it has been erected, or to pollute or obstruct any water-course, lake, pond, marsh or common sewer, so as to render the same offensive to the county, town, village or neighborhood. Whilst all these acts are designated

nuisances, and although this *calaboose* may have been so managed or situated as to be a nuisance, still it is in nowise embraced or enumerated in this section.    If an offense at all, it was so by the common law, and not by statute.    And as the indictment concludes against the form of the statute, and there being no such statutory offense, the motion to quash should have been sustained.    The judgment of the court below is therefore reversed.

*Judgment reversed.*