## Philip Bulfer et al. v. The People of the State of Illinois.

### Gen. No. 13,794.

1. Conspiracy—*when indictment for, insufficient.* An indictment for conspiracy, charging that the defendants "unlawfully and feloniously did conspire, combine, confederate and agree together with each other and divers other persons, whose names are to the jurors unknown, to do a certain illegal act, to-wit: to then and there unlawfully obtain the signature of one Louis Perlman to a written instrument, with the intent to cheat and defraud the said Louis Perlman by means of false pretenses, such obtaining of a signature by false pretenses then and there being an act by law prohibited. Contrary to the form of the statute and against the peace and dignity of the same People of the State of Illinois," is insufficient either at common law or under the statute.

2. Conspiracy—*what not punishable.* The charge of a combination to secure the signature of a person to a written instrument, although the further allegation is made that the securing of the signature is to be with the intent of cheating and defrauding that person by means of false pretenses, is not the charge of a punishable conspiracy either under the Illinois statute or at common law.

3. Conspiracy—*what not evidence of participation in.* Failure to speak in denial of accusations when the right of silence exists is not evidence which tends to establish participation in a conspiracy charged.

Criminal prosecution for conspiracy. Error to the Criminal Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the October term, 1907. Reversed. Opinion filed April 30, 1908.

ADDISON BLAKELY, WILLIAM R. CHAMBERLAIN, UTT BROS. and A. L. FLANNINGHAM, for plaintiffs in error.

JOHN L. HEALY, State's Attorney, for defendants in error; EDWARD S. DAY, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

The plaintiffs in error in this cause were, in the Criminal Court of Cook county, indicted for and

convicted of conspiracy. The punishment of Bulfer, Touhy and Burnett was fixed by the jury at confinement in the penitentiary, and that of Daubach at a fine of $250, and they were so accordingly sentenced June 17, 1907. The writ of error sued out from this court to reverse these judgments was made a *supersedeas* by the court.

We think that the indictment should have been quashed on the motion made by each of the defendants, and that no conviction can be sustained thereon.

The question was saved below not only by the motion to quash, but by the motion in arrest of judgment.

The indictment had but one count, which charged that Bulfer, Touhy, Burnett and Daubach on the sixth day of January, 1906, in the county of Cook, etc., "unlawfully and feloniously did conspire, combine, confederate and agree together with each other and with divers other persons, whose names are to the jurors unknown, to do a certain illegal act, to wit: to then and there unlawfully obtain the signature of one Louis Perlman to a written instrument, with the intent to cheat and defraud the said Louis Perlman by means of false pretenses, such obtaining of a signature by false pretenses then and there being an act by law prohibited. *Contrary to the form of the statute* and against the peace and dignity of the same People of the State of Illinois."

It is not a statutory offense which is thus charged.

The statute says (An Act to Revise the law in relation to Criminal Jurisprudence; in force July 1, 1874—Section 46, as amended):

"If any two or more persons conspire or agree together, * * * with the fraudulent or malicious intent wrongfully and wickedly to injure the person, character, business or employment, or property of another, *or to obtain money or other property by false pretenses,* or to do any illegal act injurious to the public trade, health, morals, police, or administration of public justice * * * or to commit any felony, they shall be deemed guilty of a conspiracy,

and every such offender * * * and every person convicted of conspiracy at common law, shall be imprisoned in the penitentiary, not exceeding five years, or fined not exceeding $2,000, or both.''

The indictment on the other hand does not say the defendants conspired ''to obtain money or other property by false pretenses,'' but ''to unlawfully obtain the signature of one Louis Perlman to a written instrument.''

The word ''unlawfully'' is merely a gratuitous epithet, for obtaining the signature of a man to a written instrument is, of course, not unlawful in itself. Were this, then, all of the indictment, it is plain that it could not be claimed that it charged ''a concerted action to accomplish a criminal or unlawful purpose,'' or ''a concerted action to accomplish a lawful purpose by unlawful means''—one of whch the alleged combination must be to be a conspiracy.

But as the indictment is drawn, that part of it which we have last above quoted, is, in our opinion, the entire gist or substance of the charge.

It is true that the indictment goes on to say that the proposed purpose of obtaining the signature of Louis Perlman to a written instrument, was ''with the intent to cheat and defraud the said Louis Perlman by means of false pretenses,'' but it does not state how or what ''false pretenses'' this intent to do something with the signature after it was obtained was carried out, or was designed to be carried out. The indictment then proceeds: ''Such obtaining of a signature by false pretenses then and there being an act by law prohibited.''

Without inquiring at this point whether ''the obtaining of a signature by false pretenses'' *is* by itself ''an act by law prohibited,'' we must note that the pleader drawing the indictment overlooked the fact that there was preceding this particular clause no charge in it of obtaining or conspiring to obtain a signature by false pretenses and nothing, therefore,

to which the word "such" was properly referable. The charge was conspiring to obtain the signature, and the "false pretenses" are only mentioned in that charge as the method by which the intent to cheat and defraud by means of that signature when obtained was to be carried out. The distinction is very plain. It might be that persons might use and agree to use none but strictly legitimate and truthful methods and representations to secure a signature, and have an intent to use it when obtained in connection with false pretenses concerning it, to cheat the signer, or some other person, and those false pretenses might be conceivably of a great variety of kinds. On the other hand, it might be that persons might use false pretenses to secure a signature, with no intent to use it for any nefarious or dishonest purpose whatever. Autograph hunters, we are told, often act thus.

It is the first alternative, however, with which the plaintiffs in error here are charged—conspiring to procure the signature with the intent to use it dishonestly to cheat and defraud in connection with false pretenses.

It is charged in the indictment that this is "an illegal act," and it may be that in a liberal use of the word illegal, it must be so considered. But it is not an "illegal act, injurious to the public trade, health, morals, police, or administration of public justice" under the construction given to those words by our Supreme Court. In Maloney v. The People, 229 Ill. 593, where this clause is discussed and construed, it is also expressly held that an indictment charging a conspiracy to do "an illegal act," would not charge a punishable conspiracy under our statute, unless it also charged, or at least by its allegations showed, said illegal act to be included among those specifically mentioned in the conspiracy statute, or a felony.

If the charge were of a conspiracy to "obtain money or other property by false pretenses" from Louis Perlman, it would state a statutory conspiracy.

If the charge, on the other hand, were of a conspiracy "to secure by false pretenses with intent to defraud him, Perlman's signature," it would state perhaps a common law conspiracy, because although not a felony, the object of that conspiracy would be an indictable offense under the Criminal Code. (Section 96 of the Act of 1874, before referred to.) This, however, might be doubtful under the doctrine of Maloney v. The People, *supra*. But it is not necessary to decide that question here, because the accusation is neither to obtain money nor to obtain a signature by false pretenses, but to obtain a signature with intent to cheat and defraud the signer by means of false pretenses, presumably and according to the natural intendments of language, by the signature after it was obtained.

This indeed was what the proof introduced by the state tended and was intended to show—an attempt after the signature was obtained to use it in concert and combination for purposes of extortion.

We do not see how, under the decision in the Maloney case, we can hold that the charge of a combination to secure the signature of a person to a written instrument, although the further allegation is made that the securing of the signature is to be with the intent of cheating and defrauding that person by means of false pretenses, is the charge of a punishable conspiracy either under our statute or at common law. In any event, it is plain that it cannot be considered as a conspiracy under the statute. The indictment concludes, however, "contrary to the form of the statute," and there has never been any decision in this state overruling the decision in The Town of Paris v. The People, 27 Ill. 74, that such a conclusion of an indictment forbids the proof under it of a common law offense not included in the statutes.

In Maloney v. The People, No. 13187 in this court, although not placing our decision on that ground, we expressed a doubt whether this rule would be longer

adhered to, but the reversal of our decision in that case, without an expression of opinion by the Supreme Court on that point, would leave us unwilling to disregard it, even were there no other reason against sustaining this indictment.

We are not unmindful of the statutes of Illinois which provide that: "Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of the statutes creating the offense, or so plainly that the nature of the offense may be easily understood by the jury." (Criminal Code, Division XI, Sec. 6.) And that "All exceptions which go merely to the form of an indictment shall be made before trial, and no motion in arrest of judgment or writ of error shall be sustained for any matter not affecting the real merits of the offense charged in the indictment." (Criminal Code, Division XI, Sec. 9.) These are, however provisions that were in force long before Paris v. The People (*supra*) was decided, and they did not lead the Supreme Court to look with indifference on the point therein made against the indictment. But in the case at bar, there is something more than a technicality involved. It is certainly a fundamental principle of justice, as Lord Ellenborough said in The King v. Perrott, 2 Maule & Selwyn, 379, that "Every indictment ought to be so framed as to convey to the party charged a certain knowledge of the crime imputed to him." Whatever might have been said in this regard of an indictment which merely stated in the words of the conspiracy statute, that the defendants had "conspired to obtain money by false pretenses," or had stated with reference to the "False Pretenses" Statute, that they had conspired "by a false pretense to obtain a signature to a written instrument"—concerning which we are not called on to express an opinion—it seems quite evident to us that to accuse them of conspiring to procure Perlman's signature, with the intent to defraud him by false pre-

tenses, is not to give them any information worth having as to what particular unlawful and criminal acts they are charged with conspiring to do.

The spirit of the constitutional provision that accused persons shall have the right to demand the nature and cause of the accusation against them is by no means complied with in such an indictment.

Nor would it matter if it could be pointed out in this case that the evidence in the record is of such a character as to indicate that probably the defendants, when brought to face the indictment in question, must have known what that evidence was likely to be. The sufficiency of the indictment having been challenged before trial by the plaintiffs in error, they are entitled to have from us our judgment as to what should have been done with the motion to quash when made. Our opinion is that it should have been granted. This disposes of the cause here, for the conviction cannot be upheld on an indictment which was erroneously sustained by the court below against a motion to quash. It becomes, therefore, unnecessary for us to discuss the evidence adduced, and to decide whether or not it is sufficient to convict the plaintiffs in error of a criminal conspiracy, had the indictment been properly drawn. But we have in our investigation of the cause considered it, and deem it proper to say that in our judgment no such case as would justify a conviction for any conspiracy was made out against Patrick L. Touhy.

It requires some active participation in a conspiracy to make a conspirator. There is no evidence of active participation against Touhy. That which most nearly approaches it is, that letters were written about, and suits were brought on, the alleged contracts, in the name of Touhy, and it does not appear that he repudiated them. But neither does it appear affirmatively that he knew of them. We emphatically disagree with the argument that because Touhy did not, at the Harrison street police station, answer the

questions of the police officer Woolridge, or speak out in denial of Bulfer's statement that he (Touhy) ran the Chicago Mercantile and Reporting Agency, he is to be considered as admitting it. He was not in that situation called on to speak. He had a right to keep silent, and it was error to admit the testimony of Woolridge on this point.

The judgment against Philip Bulfer, the judgment against Patrick L. Touhy, the judgment against L. E. Burnett and the judgment against J. C. Daubach are and each of them is reversed.

*Reversed.*