People of State of Illinois, Plaintiff in Error, v. Meyer Dorman, Everett Owen, Herman Riseman, Tony Gullo, and Mary Marinella, Defendants.
Everett Owen, Herman Riseman and Mary Marinella, Defendants in Error.

Gen. No. 9,733.

Opinion filed November 6, 1951. Rehearing allowed

317

January 16, 1952. New opinion filed June 10, 1952. Released for publication July 7, 1952.

GEORGE P. COUTRAKON, State's Attorney, Sangamon county, of Springfield, for plaintiff in error; JOHN B. STODDART, JR., and ROBERT B. OXTOBY, Assistant State's .Attorneys, both of Springfield, of counsel.

·JOSEPH A. LONDRIGAN, ROBERT WEINER, and PREE & PREE, all of Springfield, for defendants in error.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

At the May Term, A. D. 1950, of the Sangamon county circuit court, the Grand Jury returned an indictment consisting of two counts against the defendants, the first count being for the operation of a "book" upon certain premises in the City of Springfield, Illinois, and the second count charging the same defendants with conspiracy to do an illegal act injurious to the public morals, police and administration of public justice, to wit: to wilfully and wrongfully keep a certain room in the rear of certain premises in the City of Springfield, Illinois, with a certain book or instrument known as a book, said book then and there being kept for the purpose of registering bets and wagers upon the result and test of speed of a beast, to wit: a horse, contrary etc.

The defendants were arrested and upon arraignment were given leave to withdraw pleas of "not guilty" and move to quash the indictment. Each of the defendants did move to quash the indictment. The trial court upon the motion to quash allowed the motion to quash as to Count II of the indictment, and denied the motion as to Count I. It was stipulated by all parties that a memorandum opinion of the trial Judge, the HONORABLE L. E. WILHITE, stating the reasons for quashing

318

Count II of the indictment might be incorporated in the record on appeal. The case comes to this court on writ of error.

██ This court is not too much concerned about the form of the indictment in this case. Whether it recites an offense against the statutory law, the common law, or both, is, in the light of the decision of this court in *Maloney v. People,* 132 Ill. App. 184, not important. In that case the court said: "By logic and correct reasoning it would seem that conspiracies by the common law are thereby adopted into the statute and become a part of the statute, and like many other provisions of our statute, which are simply declaratory of the common law, become, when so engrafted into our state law, a part of the lex scripta of our state. An infraction of such a statute, it logically and necessarily follows, is contrary to it."

██ The first count of the indictment charges the offense of gaming and the second count a conspiracy. The two do not merge, even though the same act is the basis for both. Each stands on its own merits. The question that concerns this court is whether a conspiracy charged here, falls within the class of cases enumerated by the statute. The appellant claims that the provision of the statute relating to conspiracy, which says "or to do any illegal act injurious to the public trade, health, morals, police, or administration of public justice," is a separate offense and not part of the general language of that section of the statute, and does not come within the doctrine of *"ejusdem generis."* If the contention of the appellant is correct, then this opens a very broad field in the prosecution of misdemeanors, where two or more persons are involved. The defendants rely upon the case of *Bulfer v. People,* 141 Ill. App. 70, where the charge is obtaining the signature of one Louis Perlman to a written instrument. That case is not decisive on the question

319

in the instant case since the indictment in the *Bulfer* case clearly did not state any offense enumerated by the conspiracy statute. If the indictment in the *Bulfer* case had been for "conspiracy to obtain money or other property by false statements," it would have been proper. If it had been for some "act injurious to the public morals, police or administration of public justice," then the question now before this court might have arisen.

The defendants also rely upon the "concert of action" doctrine which relates to the crime of conspiracy and rely upon one Illinois case, namely *People v. Purcell,* 304 Ill. App. 215. That was a case where two persons were indicted for conspiracy to play cards for money. There, only two persons were involved and the playing cards for money is a substantive offense which cannot be committed by either person singly and could only be committed by the concerted action of both parties. Here, five persons and "other persons to the grand jury unknown" are charged with conspiracy to "do an illegal act injurious to the public morals, police and administration of public justice." We do not believe the *Purcell* case is applicable in this case.

There are two points that must be decided. First, do the words "to do any illegal act injurious to the public trade, health, morals, police or administration of public justice," in the conspiracy statute, state a separate offense, or are they general words, and governed by the doctrine of "*ejusdem generis?*" Second, did the legislature intend that the commission of any illegal act by two or more persons, injurious to the public trade, health, morals, police or administration of public justice be punishable by imprisonment in the penitentiary not to exceed five years or a fine not exceeding $2,000 or both?

In the case of the *City of Chicago v. Ross,* 257 Ill. 76, the City of Chicago passed an ordinance under a certain section of the statute which gave to the cities a right "to suppress bawdy and disorderly houses, houses of ill-fame, or assignation, . . . and also to suppress gaming and gambling houses, lotteries, and all fraudulent devices and practices, for the purpose of gaining or obtaining money or property." The ordinance dealt with persons who obtained money or property by means of fraudulent devices and practices. The court held that the words "all fraudulent devices and practices" must be held to refer to the devices and schemes which involve an element of chance and which are similar to the things designated by the particular words found in the statute, that is, gaming, gambling houses and lotteries. And the court said further in the opinion: "It has been repeatedly held by this and other courts, that where general words follow particular and specific words in a statute, the general words must be construed to include only things of the same kind as those indicated by the particular and specific words." Citing *Shirk v. People,* 121 Ill. 61; *Ambler v. Whipple,* 139 Ill. 311; *Cecil v. Green,* 161 Ill. 265; *Gundling v. City of Chicago,* 176 Ill. 340; and the court continuing in the same opinion, said: "and this rule is enforced in the construction of a statute unless there is something in the statute or its context which shows that the doctrine of *ejusdem generis* should not be applied."

In the case of *People v. Melville,* 265 Ill. 176, one Melville was convicted of contributing to the delinquency of a female child. The statute upon which the information was based, was as follows: "Any parent or parents, or legal guardian, or person having the custody of any dependent, neglected or delinquent child, as defined by the statutes of this State, or any

other person who shall knowingly or wilfully encourage, aid, cause, abet or connive at such state of dependency, etc." Melville was not a parent, guardian, or had the custody of the girl. The general words in that case were "or any other person." The court in that case, citing the case of *City of Chicago v. Ross,* 257 Ill. 76, said: "There is nothing in the statute under consideration, or in its context, to show that the doctrine of *ejusdem generis* should not be applied."

In the case of *People v. Sheldon,* 322 Ill. 70, which is a case involving the possession of a pistol or revolver, the law under which a conviction was sought, was "It shall be unlawful for any person to carry or possess or sell, loan or give to any person, any blackjack, sling-shot, sand-club, sand-bag, metal knuckles, bludgeon, or to carry or possess, with intent to use the same unlawfully against another, a dagger, dirk, billy, dangerous knife, razor, stiletto, or any other dangerous or deadly weapon or instrument of like character." The court in that case held that the doctrine of *ejusdem generis* applied and that the language did not apply to pistols, revolvers or other firearms.

In *Bullman v. City of Chicago,* 367 Ill. 217, an ordinance of the City of Chicago which purported to define secondhand dealers, and used the general words "any second hand article whatsoever," and these words were held to follow the particular and specific words of the statute and fall within the rule of *ejusdem generis.*

█ The language of the statute under consideration here is "or to do any illegal act injurious to the public trade, health, morals, police or administration of public justice." In the light of the cases heretofore cited on the doctrine of *ejusdem generis,* we must hold these words to be general words, and limit-

322

ited to the specific offenses set forth in the statute. They do not define a separate or distinct offense.

██ ██ But there is another consideration that this court holds is extremely important and that is the intention of the legislature in enacting the conspiracy law. The legislature has defined gaming, the keeping of a "book" and other similar offenses and has set a penalty for violation. The keeping of a "book" or "handbook" is a misdemeanor and punishable by a fine up to $2,000 and imprisonment in the county jail for a period of not to exceed a year. But did the legislature intend that the same persons who committed the offense of keeping a "book" should also be charged and prosecuted for a conspiracy charge, where two or more persons are involved? The language of the statute is very broad. "Or to do any illegal act injurious to the public trade, health, morals, police, or administration of public justice." Under a broad construction of those words, if two or three people decide to get intoxicated, they might be held guilty of conspiracy to do an act injurious to the public morals and might be sent to the penitentiary. Or, two or more persons might decide they would go fishing without obtaining a license, and they might be charged under such construction of conspiracy to do an act injurious to the police. The implication of such a broad construction might lead to an indictment of conspiracy for almost any violation of the law by two or more persons. That certainly was not intended by the legislature and as a matter of public policy it must not be so construed. Criminal statutes should be construed strictly. To place in the hands of the law enforcement officers a weapon which would subject the people to prosecution for a conspiracy for almost any violation of the law, where two or more are involved, would be unthinkable in this State.

The judgment of the Sangamon county circuit court is affirmed.

*Affirmed.*