**The People of State of Illinois, Plaintiff in Error, v. Moris Balkan et al., Defendants in Error.**

**Gen. No. 10,667.**

Opinion filed July 9, 1953. Released for publication July 27, 1953.

BERNARD J. MORAN, State's Attorney, of Rock Island, for plaintiff in error; ROBERT A. KLOCKAU, and CHARLES T. MILLER, Assistant State's Attorneys, both of Rock Island, of counsel.

FRANCIS J. COYLE, and SINNETT & BRITTON, all of Rock Island, for defendants in error; SAMUEL M. GILMAN, of Rock Island, of counsel.

MR. JUSTICE WOLFE delivered the opinion of the court.

A grand jury in and for the County of Rock Island, State of Illinois, returned an indictment against Moris Balkan and others, charging them with conspiracy with the fraudulent and malicious intent, unlawfully, designedly, wrongfully and wickedly to do "an illegal act injurious to the public health." The defendants appeared in court and entered a motion to quash the indictment. The court sustained the motion and quashed the indictment, and the People of the State of Illinois have perfected an appeal to this court to reverse the order of the circuit court.

The indictment charges that the defendants in pursuance to and according to the unlawful, false and wicked conspiracy and confederacy, combination and agreement, indirect, subtle, and unlawful means, etc., did have in their possession and sell horse meat or a mixture of horse meat and the meat of other animals, without then and there being plainly labelled or tagging such meat or mixture of meats with words ".Horse Meat."

96

The statute of the State of Illinois, chap. 56½, sec. 248 [Jones Ill. Stats. Ann. 53.272], provides as follows: "No distributor of horse meat shall have in his possession horse meat ready for distributing unless each package or piece is plainly labeled or tagged with the words 'Horse Meat' or, if the meat is that of some member or members of the equine family other than the horse or is a mixture of meats, then with a label designating the specific species from which such meat was derived." The statute [Ill. Rev. Stats. 1951, ch. 56½, § 255; Jones Ill. Stats. Ann. 53.279] also provides: "Whoever violates any provisions of this Act shall be punished by a fine of not less than $500 nor more than $5,000 or by imprisonment in the county jail not to exceed one year for each offense, or by both fine and imprisonment."

Our statute on conspiracy [Ill. Rev. Stats. 1951, ch. 38, § 139; Jones Ill. Stats. Ann. 37.102] is in part as follows: "If any two or more persons conspire or agree together, . . . to do any illegal act injurious to the public trade, health, morals, . . ." etc., shall be punished upon conviction thereof by a fine "not exceeding $2,000 or shall be imprisoned in the county jail not exceeding one year, or shall be imprisoned in the penitentiary for a term of not less than one year and not exceeding five years, or may be so fined and so imprisoned in the county jail or penitentiary."

██ It will be observed that this prosecution is not for the violation of what is termed the horse meat law, but is under the Conspiracy Act, and the punishment is different for each. In this indictment it is charged that the act of selling horse meat or having in possession horse meat that has not been labelled, as required by the statute, is injurious to the public health. The law relative to such offenses is clearly stated in *Maloney v. People,* 229 Ill. 593, which is as follows: "It is

conceded by defendant in error that a conspiracy formed for the purpose of extorting money from another by threatening to accuse such other person of a crime is not an illegal act *contra bonos mores,* but it is insisted that the phrase, 'injurious to public morals,' may be rejected as surplusage and that the indictment would still contain all of the essential elements of a charge of conspiracy. We cannot assent to this view. An indictment charging a conspiracy to do an illegal act which in its nature could not be injurious to public trade, health, morals, police or the administration of public justice, and not to commit any felony, would not be a conspiracy under our statute. The statute seems to be leveled at and limited to illegal acts which in their usual and ordinary tendencies are injurious to the public trade, health, morals, police or the administration of public justice, and the character of the illegal act in this regard enters into the definition and qualifies the illegal act by limiting it to the classes of illegal acts mentioned in the statute. If defendant in error's position is sustained, then any illegal act which is prohibited by the statute may become, when two or more persons are charged together, the subject of an indictment for conspiracy and subject the offender to imprisonment in the penitentiary, or a fine of $2,000, or both. Our statutes prohibit the obstruction of a public highway, carrying concealed weapons, killing game in certain seasons of the year, and many other things that might be mentioned. Such acts are illegal because prohibited by statute. The conviction of any such offenses is followed by the penalties severally fixed thereto by the statute, usually a fine. Can it be contended that if two or more persons combine and agree together to commit any of these or other like offenses they may be indicted for a conspiracy and imprisoned in the penitentiary under section 46 of the Criminal

Code? Certainly not, unless it could be said that such illegal act also had the quality of being 'injurious to the public trade, health, morals, police or administration of public justice.' "

█ In the later case of *People v. Borrelli*, 392 Ill. 481, the court reviewed the case of *Maloney v. People, supra,* and stated as follows: "It is the contention of plaintiff in error that the indictments are fatally defective and not sufficient to charge him with a criminal offense. In support of this contention counsel cite the case of *Maloney v. People,* 229 Ill. 593. That case, however, is not authority for such contention. The defendants in that case were, as is plaintiff in error here, indicted for conspiracy under section 46 of the Criminal Code, which provided then as it does now (Ill. Rev. Stat. 1943, chap. 38, par. 139): 'If any two or more persons conspire or agree together . . . to injure the person, character, business or employment, or property of another, or to obtain money or other property by false pretenses, or to do any illegal act injurious to the public trade, health, morals, police or administration of public justice, or to prevent competition in the letting of any contract by the State, or the authorities of any counties, city, town or village, or to induce any person not to enter into such competition, or to commit any felony, they shall be deemed guilty of a conspiracy.' As observed by this court in the *Maloney* case, section 46 is directed against conspiracies of different kinds. One kind is a conspiracy to injure the person of another. It is this kind of conspiracy with which the plaintiff in error is charged here. Another kind is a conspiracy to do an illegal act injurious to the public trade, health, morals, police or administration of public justice. The indictment in the *Maloney* case charged a conspiracy to do an illegal act injurious to public morals, the illegal act being

99

described under a videlicet as being to threaten verbally to accuse a certain person of crime for the purpose of extorting money. This court held that a statement both of the illegal act and the character of such act which was the object of the conspiracy were essential allegations of the indictment, neither of which could be rejected as surplusage, as both entered into the substance of the description of the offense, and if they were inconsistent or repugnant the indictment was void; and that since to threaten, verbally, to accuse another of crime for the purpose of extorting money is not an offense injurious to the public morals, the Maloney indictment was void for repugnancy." To the same effect is *Bulfer v. People,* 141 Ill. App. 70.

It will be observed that these cases hold that not every conspiracy to do something of which the statute provides a penalty for an individual to do does not necessarily make it a criminal conspiracy if two or more people agree to do the same act. While the statute makes it an offense to sell or have in possession horse meat for sale that has not been stamped according to the statute, it cannot be said that the sale of such meat without this stamp would necessarily be injurious to the public health. It is a well-known fact that at the time this statute was passed that live horses could be purchased from three and one-half to four cents per pound, and beef, of fair quality, would cost at least twenty-five cents per pound, and if this horse meat was sold as beef, while it would not be injurious to the health of the people, it would be fraud against purchasers. No doubt the statute was passed to prevent this fraud of innocent people buying horse meat for what they thought was beef. The mere stamping of the meat as horse meat would not make any difference in the quality of the meat, but it would simply be for the protection of the purchaser to be sure he was not paying for beef and getting horse meat.

The trial court in passing upon the motion to quash the indictment stated: "The ruling of the Court is that the mere absence of a label on meat cannot be said to have the usual effect of an injury to the public health. It may result in deception and fraud, but health could only be affected by some bad quality of the meat other than the mere absence of the label, and none is charged." We agree with this statement of the learned trial judge, and it is our conclusion that the trial court properly sustained the motion to quash the indictment and the judgment appealed from is affirmed.

*Judgment affirmed.*