**People of the State of Illinois, Defendant in Error, v. Joseph R. Roth, Plaintiff in Error.**

Gen. No. 47,591.

First District, Third Division.
April 30, 1959.
Rehearing denied June 22, 1959.
Released for publication June 22, 1959.

10

George M. Crane, and Myer H. Gladstone, both of Chicago, for plaintiff in error.

Benjamin S. Adamowski, State's Attorney (Francis X. Riley, Edwin A. Strugala, Assistant State's Attorneys, of counsel) for defendant in error.

JUSTICE BRYANT delivered the opinion of the court.

This is a writ of error to the Criminal Court of Cook County seeking to reverse a judgment against defendant, who was charged in the indictment with the crime of conspiracy. The jury found him guilty and fixed his punishment as imprisonment in the penitentiary. A motion for a new trial was made in writing, and a motion in arrest of judgment was made. The court overruled both motions and sentenced defendant to serve a term in the penitentiary of not less than one year nor more than three years.

Defendant first challenges the validity of the indictment under which he was tried. The indictment consisted of two counts. The first count related to an alleged conspiracy to make an assault with an intent to kill and murder. There is no evidence in the record which substantiates any conspiracy with the intent to kill and murder, and this count in the indictment is therefore not material in this appeal. The second count charged defendant with a conspiracy with others to assault one Sanford Lerner. It is the validity of this count which is here in question. Defendant filed a motion to quash the indictment and again

11

challenged the validity of the indictment in a motion in arrest of judgment. Both of these motions were denied, and it is of these rulings of the court that defendant complains.

It is first urged that the second count of the indictment does not include the statutory words "with the fraudulent or malicious intent wrongfully and wickedly to injure the person." There is, however, in addition to the conspiracy as defined by the statute, a common law conspiracy, which is defined as an agreement or combination between two or more persons to do an unlawful act or to do a lawful act by unlawful means. While it is true that the words in the statute are not used in exactly the same order in the indictment as they appear in the statute, it is also true that all the words used in the statute appear in the indictment in such a manner as to include all of the elements of the statutory offense in the indictment. It is also true that the second count of the indictment includes the words at the end "contrary to the law," and that the words included in the count setting forth the offense are clearly within the common law definition of a conspiracy. The indictment clearly set forth and notified defendant of every material element of the crime with which he was charged, either under the statute or under a common law conspiracy to commit an assault. People v. Borrelli, 392 Ill. 481, 491.

It is also urged that the Criminal Code of Illinois provides the penalty for violation of the statute relating to assault and for violation of the statute relating to assault and battery which is lesser than the penalty provided for a conspiracy, and that, because of this discrepancy, the indictment against defendant is void. It is quite evident that the crime of conspiracy to commit an act may be a more serious crime than the actual commission of the act. An assault

12

might be committed by a single person in a common brawl under the influence of the events taking place, while on the other hand a conspiracy involves a ganging up of more than one person and indicates a premeditation and planning for an evil purpose which would be a far greater danger to society than an actual assault committed upon the spur of the moment. This case is of course clearly distinguishable from cases of conspiracy involving bookmaking (People v. Dorman, 347 Ill. App. 317, and People v. Dorman, 415 Ill. 385) or the selling of horsemeat (People v. Balkan, 351 Ill. App. 95, 99–100), neither of which were crimes except for the statutory provisions making them such and did not come within the language of the conspiracy statute. We are therefore of the opinion that the second count of this indictment is a valid indictment, and the court did not commit error in refusing to strike the indictment or in refusing to grant the motion in arrest of judgment on that ground.

██ It is next urged by defendant that the state failed to prove the allegations of the indictment beyond a reasonable doubt, and that the verdict of the jury and the judgment of the court are against the weight of the evidence. It is urged that the testimony of an accomplice is to be taken with great caution, and that, when it is uncorroborated, it is not sufficient to justify a verdict. People v. Hermens, 5 Ill.2d 277, 286. It is also urged that in this case as in all criminal cases the accomplice is an unsavory character. That is the fundamental basis for the rule. It would indeed be an unusual situation where a criminal accomplice was as pure as new-blown snow and had a tongue in his head that knew nothing but the truth. But, if there is corroboration, these questions of purity and veracity affecting his credibility should be left to the jury. People v. Nitti, 8 Ill.2d 136, 138. Part of this corroboration comes from the mouth of defend-

ant himself. He testified that he gave the accomplice $200 to prevent him from reporting to his wife and to the husband of another woman that he had been seen driving in an automobile with the other man's wife. This husband was Sanford Lerner, the alleged object of the conspiracy. This puts defendant in the center of the situation which produced the alleged conspiracy. While the accomplice told a different story as to the purpose for which he received the $200, it was agreed by both accomplice and defendant that the $200 was passed. The fact that the accomplice had received $500 from defendant was corroborated first by a second accomplice, who said that he was present when the accomplice came out of defendant's office with the money, and again corroborated by the fact that the bank account of defendant showed that, at or about that time a cash withdrawal of $500 on a counter check had been made from defendant's bank account. The degree of that corroboration was properly left to the jury. The testimony of the accomplice that defendant had urged him to hire assailants to assault the victim of the conspiracy is corroborated by two people who were approached for the purpose of becoming assailants by the accomplice and went with the accomplice to the place of business of the proposed victim and received instructions as to the method of assault and then later returned to the victim and advised him of the plot which was being made against him. They never became conspirators, but they were advised all about the conspiracy and the steps which were taken to carry out the conspiracy, as the accomplice testified was desired by defendant. The testimony of these two independent witnesses was also corroborated by an employee in the store run by the proposed victim. There were other witnesses who also testified that they had been approached by the accomplice, as he testified he had done upon the re-

14

quest of and after conferring with defendant. These examples are sufficient to indicate that the accomplice's story was corroborated. The verdict of the jury was not contrary to the manifest weight of the evidence and should not be disturbed, and the action of the court in entering judgment upon the verdict and refusing to set it aside is not error.

Defendant alleges that the court committed error in allowing the testimony of one Stein to be introduced as impeaching the veracity of defendant. The incident, including the admissibility of the Stein testimony, impinges upon a question and answer given at the close of the testimony of defendant. Near the close of defendant's direct testimony, he testified that he had never conspired or sought to conspire, engaged or sought to engage or hire any of the people who had testified that they had been approached or in any way harm the victim. He then testified that he had never given the accomplice any money for the purpose of hiring anybody to beat up the proposed victim. Then undoubtedly for the purpose of using the oldest educational method known, that of repetition, and to impress the jury, counsel for defendant asked, "And you never conspired with these men?" Defendant, joining in the spirit of the occasion, answered, "Never conspired with anybody." On this happy and supposedly convincing note the witness was turned over for cross-examination.

■ The first question asked by the state's attorney was, "Never conspired with anybody?" Immediately defendant made a motion to strike the answer because it was not responsive. The answer was never stricken. Defendant complains of the failure of the court to rule. The failure to rule may properly be considered as a refusal of the motion. The motion was not made immediately upon the giving of the answer, but only after the witness had been turned

over for cross-examination and the first question had been placed by the state's attorney. The answer is in fact responsive. It answers completely the question which was asked by the defense counsel and more. It is of course true that the propounder of a question has a right to make a motion to strike an answer which is not responsive. Usually the motion is made upon cross-examination, unless there is a recalcitrant witness, and usually it is made promptly upon the giving of the answer. We are not prepared to say that the failure of the court to strike the answer in this case under these circumstances is reversible error.

This answer became important, however, when Stein was called as a witness by the state in rebuttal to prove that, years before, he had conspired with defendant, and that therefore defendant was lying when he said that he had "never conspired with anybody." Numerous witnesses were called to question Stein's veracity and to impute a motive of hatred to him insofar as defendant was concerned. Stein's as well as defendant's credibility was a matter for the jury, and the court made no error in regard to the admissibility of that testimony.

Defendant also complains that the court allowed the admission into evidence of certain love letters written by defendant to the wife of the intended victim of the conspiracy. Although they were written by defendant after the conspiracy, they showed clearly a motive of defendant in regard to the alleged conspiracy and affected the credibility of the story told by the accomplice in regard to defendant's action in soliciting his services to make an assault upon the intended victim. Those letters were qualified for admission by the testimony of defendant's wife that she was familiar with defendant's handwriting, and that these letters were in his handwriting. It is urged by defendant that she was an improper person to tes-

16

tify as to the handwriting of defendant, and that she is disqualified under the Illinois Revised Statute which provides that in criminal cases a husband or a wife may testify for or against each other, provided "that neither may testify as to any communication or admission made by either of them to the other or as to any conversation between them during coverture." Defendant urges that "as to any communication" would refer to the wife's familiarity with the husband's handwriting, as writing is a way to communicate. The rationale underlying the statutory rule of evidence of course relates to the sanctity and preservation of marriages and holding inviolate the subject of confidential communications between the parties. It is not in the least applicable to the familiarity of the wife with her husband's handwriting. People v. Palumbo, 5 Ill.2d 409, 412 et seq. The ruling of the court in regard to the qualification of the letters and their admissibility was entirely proper, and there was no error.

Defendant has urged prejudicial error arising from the statements and conduct of the state's attorney throughout the trial and in his oral arguments. The assistant state's attorney who tried this case has had long experience in the office of the state's attorney of Cook County. The two attorneys who represented defendant are men of broad experience in criminal practice, and they are all familiar with the art and stratagems commonly used in the trial of criminal matters in Cook County.

We have considered all the matters complained of by defendant. We do not propose to discuss each incident separately. It will suffice to say that none of the incidents of which complaint is made relate to testimony directly affecting the guilt or innocence of defendant. Generally they are a part of inter-counsel tilting over collateral and unimportant matters which

17

are so far removed from the issues that it would be a strained interpretation to find that the conduct of counsel had prejudiced the jury insofar as defendant is concerned. Often this becomes evident when the matter is considered in context with what had been and was transpiring in the court at the time or just before. Most of the objections arose out of the testimony relating to the credibility of witnesses. A few of the objections derived from an attempt of the state to affect the credibility of defendant and some in regard to the credibility of the accomplice, who testified on behalf of the state. One objection was spawned by the cross-examination of defendant and the resulting testimony of the witness Stein, which we have already approved.

In other cases, however, the objection hinged upon the testimony relating to credibility of witnesses further removed from the charge. One such objection related to the persistence of the state's attorney in establishing that the victim of the conspiracy had a police guard in January, 1957. It seems far removed and inconsequential. The accomplice had testified that, after defendant's request, he had contacted Williams and Rowe for the purpose of having them make an attack upon the victim of the conspiracy, and that he had taken Williams and Rowe to the place of business of the victim and given them money to make a purchase at his store, so that they might identify the victim. He further testified that Williams and Rowe had refused to have anything to do with the matter finally. Williams and Rowe testified that they had been approached by the accomplice, had gone with him to the place of business of the victim, and that, after they had made the purchase and learned the identity of the victim, that night they returned to the victim and told him of the plot against him and asked his co-operation in getting

18

out of town, so they could collect the money. Williams' and Rowe's statement was corroborated by the testimony of a clerk in the victim's store, who said she had seen them there at a certain time and had seen them talking with the victim, and it was from the clerk that the testimony in regard to the police escort was attempted to be introduced. Perhaps acquiring a police escort after being warned by Williams and Rowe would be corroboration of their warning and go to their credibility. However, the court sustained the objection of defendant's counsel and struck the questions and answers. If there was error on the part of the state's attorney in pressing for an answer on the question of the police guard, certainly it was so remotely connected with the guilt or innocence of defendant that it could not be reversible error.

Another objection emanated from the testimony of a character witness for defendant who had been defendant's banker. The state's attorney wanted to know if he had examined defendant's checking account with that bank. It might well have been a proper means of impeaching the character witness' knowledge of defendant's reputation. The court sustained defendant's objection to the question. The mere asking of the question does not seem to have in it any elements of prejudice.

On the whole the trial court appears to have been particularly zealous in protecting the rights of defendant, and in all his rulings he gave the benefit of any doubt to defendant. In each case where he thought the situation deserved it, he struck the question and answer and directed the jury to disregard the same.

There is no doubt that the state's attorney's argument was a forceful polemic. Generally it was a fair comment upon the evidence introduced and the inferences reasonably to be drawn therefrom. When it became heated, its pace was generally interrupted by

an objection from defendant's counsel which, while overruled by the court, accomplished the purpose of slowing down the state's attorney. When it became too heated, the court sustained the objections of defendant's counsel. The state's attorney's comments relating to these objections is so far removed from the comments in the case of People v. Munday, 280 Ill. 32, 48, that that case is not applicable. We have considered the cases relating to the improper interrogation of character witnesses (People v. Hermens, 5 Ill. 2d 277, 287; People v. Hannon, 381 Ill. 206, 209; People v. Celmars, 332 Ill. 113, 118). They are not applicable to this case. We have also considered the case of People v. Maria, 359 Ill. 231, 236, and feel that the comments of the state's attorney there were so prejudicial and objectionable that they afford no criterion for the judgment of the comments in this case.

Perhaps the state's attorney's conduct cannot be considered a model which aspiring young prosecutors should follow. While we can neither condone nor approve it in all its aspects, still we do not believe the incidents singly or taken together are sufficient to prejudice the jury against defendant so that defendant did not have a fair trial. Although the trial judge admonished the state's attorney during the course of the trial, he never stopped the trial, and after the trial he denied the motions for a new trial and in arrest of judgment, thereby asserting his belief that defendant had had a fair trial before him. We are of the same opinion.

The judgment is affirmed.

Judgment affirmed.

FRIEND, P. J., concurs.

BURKE, J., dissenting.

The two principal witnesses who testified for the People, Polakoff and Dubey, are self-confessed accomplices in the crime charged in the indictment. The story related by these witnesses is not corroborated by any credible evidence. The People failed to prove the defendant guilty beyond a reasonable doubt.

The court should have stricken the unresponsive answer of the defendant that he "never conspired with anybody." On the basis of the unresponsive answer, the People were permitted to introduce the testimony of Alvin Stein as a rebuttal witness. This testimony was prejudicial to the defendant. I am of the opinion that the conduct of the State's Attorney prejudiced the defendant's right to a fair trial. The defendant was not indicted for murdering or conspiring to murder Sanford Lerner. In arguing to the jury, the Assistant State's Attorney said: "We know that Dubey and we know that Polakoff didn't kill Mr. Lerner on that date." This was equivalent to telling the jury that Polakoff and Dubey killed Lerner on another date.

The judgment should be reversed.